UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------

Susana Montes, individually and on behalf of her minor son with autism, "I.A.",

                Plaintiffs,

- against -

The American Museum of Natural History and "Jane Doe,"

                Defendants.

------------------------------------------------------------------

JURY TRIAL DEMANDED

  15  CV  9310 (  )

**COMPLAINT**

Plaintiffs, by their attorneys, MAYERSON & ASSOCIATES, as and for their Complaint against the defendants, allege:

1. Plaintiff Susana Montes is the mother of plaintiff I.A., an eight-year-old boy diagnosed with autism, and brings this action on his behalf, as well as on her own behalf.

2. Plaintiff I.A. is not being further identified by reason of his privacy but his given name will be made available to the Court and to defendants on a confidential basis.

3. Plaintiffs reside within this judicial district at 102 Bradhurst Avenue, Apt. 302, New York, NY 10039.

4. Defendant, the American Museum of Natural History ("the Museum") is a world-renowned, highly respected museum and "public accommodation" located at Central Park West and 79th Street, New York, New York 10024-5192.

5. Defendant "Jane Doe," whose name is not yet known to plaintiffs, is a female security guard employed by the Museum.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action by reason of plaintiffs' claims brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. Sec. 12181 et seq., and the equal protection and due process clauses of the Fourteenth Amendment to the U.S. Constitution.

7. Venue is properly placed in this District because this District is where the alleged discriminatory, reckless and deliberately indifferent acts and omissions took place, plaintiffs reside in this District, and this District is where defendant, the Museum, maintains its offices.

## PERTINENT FACTS

8. Plaintiff I.A. is now an eight-year-old boy who is diagnosed with autism. I.A. attends Learning Spring, a state-approved special education school located in Manhattan.

9. Plaintiff Susana Montes, I.A.'s mother, works tirelessly to make sure that I.A. makes meaningful progress both in school and in society, and that he is included in and exposed to worthwhile programs and activities that typically developing children have access to.

10. The American Museum of Natural History holds itself out to the public as being a world-class, highly accessible museum that "welcomes all visitors and strives to make its exhibitions, programs and services accessible to everyone." (See http://www.amnh.org/plan-your-visit/accessibility, last visited November 23, 2015).

11. With respect to individuals with autism, the American Museum of Natural History (in collaboration with the Seaver Autism Center at the Icahn School of Medicine at Mount Sinai) has developed a "Discovery Squad" program, described as "a unique tour program designed

for families affected by autism spectrum disorders." (See http://www.amnh.org/plan-your-visit/accessibility/autism-spectrum, last visited November 23, 2015).

12. Other than cursory information concerning its Discovery Squad program, the American Museum of Natural History does not provide any useful information on its website regarding reasonable accommodations that individuals with autism may need in order to access and experience the Museum's programs and facilities.

13. Museum Access Consortium (MAC) is an association of New York-based museums and institutions that was initially formed to address topics related to accessibility and individuals with disabilities. Today, MAC regularly hosts professional development workshops and offers a network of mutual support to help practitioners engaged with disability advocates and people with disabilities to learn about, implement and strengthen best practices for access and inclusion in cultural facilities of all types throughout the New York metro area and beyond. (See http://museumaccessconsortium.org/about/, last visited November 23, 2015).

14. Plaintiff Montes has attended a number of professional development workshops developed and delivered by MAC.

15. Plaintiff Montes is a member of "Chase Rewards," entitling her to access a number of New York-based museums, including but not limited to the American Museum of Natural History.

16. Plaintiff Montes is a frequent museumgoer who takes her son, I.A., to museums regularly.

17. Autism spectrum disorder (ASD) and autism are terms for a group of complex disorders of brain development. These disorders are characterized, in varying degrees, by

difficulties in social interaction, verbal and nonverbal communication and repetitive or otherwise interfering behaviors. With the May 2013 publication of the DSM-5 Diagnostic Statistical M, 5th Edition, all autism disorders were merged into one umbrella diagnosis of ASD.

18. Because I.A. is diagnosed with autism, and because he can experience a very difficult time waiting in long lines, or being in large crowds, plaintiff Montes has experience requesting and obtaining reasonable accommodations for I.A. under the ADA. Typically, the accommodation I.A. requires is the opportunity to advance to the head of the line so as to *avoid* the tantrums and meltdowns that result when I.A. is made to wait in a line for any appreciable length of time.

### PLAINTIFF MONTES HAD PREVIOUSLY MADE EFFORTS TO VISIT THE MUSEUM WITH I.A.

19. On July 26, 2013, plaintiff Montes reached out to the "accessibility" email address on the Museum's website with the following message:

> Dear Sir/Madam:
> I hope all is well. I am contacting you to inquire about the early morning monthly tour for kids with ASD. Please let me know more info about it. Thanks!
> Have a great day!
> All the best,
> Susana

20. On Saturday, July 27, 2013, plaintiff Montes received the following response from Jessica Liss, then-Museum volunteer supervisor:

> Dear Susana,
> We are still in the process of developing the monthly tour program for children and families affected by autism. Our first tour open to the public is tentatively scheduled for early October. I will add you to my mailing list for this program and will let you know as soon as we start accepting reservations.
> Here is some more information about the tour program:
> - Tours will usually take place on the first Saturday of every month beginning at 9am

> - For children ages 5 - 12 years old, each child must be accompanied by a parent or guardian
> - Ages 5 -9 years old: Tour North American Mammals and Ocean Life
> - Ages 10 -12 years old: Tour Dinosaur Halls
> - Length of Tour: 40 minutes
> - Advanced Reservation required
> - Ticket pricing: $15.00 for adults and $10.00 for children.
> - Social Stories for the tour will be emailed to the participants as a PDF to read to their child in advance
> In the meantime, please let me know if you have any other questions or if I can be of further assistance!
> Thank you and have a great weekend,
> Jessica
> Jessica Liss, Volunteer Supervisor
> American Museum of Natural History
> Central Park West & 79th Street
> New York, NY 10024
> 212.313.7565

21. In September, plaintiff Montes spoke with Ms. Liss about the pilot program the Discovery Squad Tour that was scheduled for Saturday, September 28, 2013. Following that conversation, Ms. Liss emailed plaintiff Montes and provided her with a "social story," a tool used to help individuals with autism better understand the nuances of interpersonal communication so that they can interact in an effective and appropriate manner. Ms. Liss' email stated:

> Dear Susana,
> It was great to speak with you on the phone this morning, and I am looking forward to meeting you and [I.A.] on Saturday.
> Attached please find the Social Story for the Discovery Squad Tour on
> Saturday. Please do not hesitate to contact me if you have any questions or if I can be of further assistance.
>
> Thank you,
> Jessica
> Jessica Liss, Volunteer Supervisor
> American Museum of Natural History
> Central Park West & 79th Street
> New York, NY 10024
> 212.313.7565

22. Prior to attending the pilot program on September 28, 2013, plaintiff Montes reviewed the social story with her son, I.A.

23. Upon arriving at the pilot program, I.A. had a very difficult time and did not have the structure he needed to remain available for participating. Thankfully, Dr. Michelle Gorenstein-Holtzman, Psy.D., from the Icahn School of Medicine at Mount Sinai, attended the Pilot Program and was available to help I.A.

24. Once plaintiff Montes and I.A. were in the Hall of Ocean Life, I.A. became regulated, quieted down and watched the whale and observed other features of the Hall. I.A. remained entirely manageable for the duration of that visit.

25. Ms. Liss of the Museum was participated in the pilot group as well.

26. On September 28, 2013, after the program had concluded, Ms. Liss emailed plaintiff Montes as follows:

> Dear Susana,
> I am so glad that you and [I.A.] were able to attend the tour and enjoyed the museum after the program. Thank you for your feedback, it is very helpful as we are continuing to develop this program. If you have any comments or questions please do not hesitate to call or email me. We hope to see you and [I.A.] again!
> Have a great weekend,
> Jessica
> Jessica Liss, Volunteer Supervisor
> American Museum of Natural History
> Central Park West & 79th Street
> New York, NY 10024
> 212.313.7565

27. Plaintiff Montes was again in contact with Jessica Liss in early December, 2014, after she viewed a facebook post from another parent in the autism community who had "posted" about her negative experiences at the Museum regarding her daughter with autism. Ms. Montes forwarded the message to Ms. Liss so that she would be aware of such information.

6

28. In pertinent part, the facebook post included the following information:

@AMNH - My husband, ****** took our daughter *******, who is also Autistic and types to communicate complex and profound thoughts, to the American Museum of Natural History here in NYC yesterday. (******** is home schooled and they go at least twice a week.) When she went to see the IMAX movie she gave her ticket to the person at the door and ran inside. My husband took her ticket stub from the attendant, who then proceeded to call our daughter a "weird kid." My husband was furious, took the attendant's name and reported him to his supervisor, who said she would "look into it."
When ******* called to follow up with the supervisor he was told the person he reported was "not the type of person to do these things." Um... except that he obviously is the "type of person to do these things" because he just had!
I asked ******** just now if she could say anything to this person what would she tell him, and she typed, "I act differently sometimes but I have feelings just like you do. Please learn about people like me so that you can understand and be a great museum worker and person."
Sensitivity Training for its employees is not optional it is a requirement.[1]

### THE OPERATIVE FACTS GIVING RISE TO PLAINTIFFS' CLAIMS

29. On December 27, 2014, Ms. Montes brought her son, I.A., to the Museum, to see its Kwanzaa Celebration exhibition. Due to I.A.'s autism, having to wait on a very long and crowded line to enter the exhibition quickly led I.A. to become overstimulated and overwhelmed. Ms. Montes asked the gentleman in front of her to hold her place in line while she approached the security guard, "Jane Doe," who was monitoring the entrance to the Kwanzaa Celebration.

30. Plaintiff Montes told defendant, Jane Doe, that her son, I.A., had autism and could not wait on line. Plaintiff Montes requested a reasonable accommodation on the basis of I.A.'s disability from defendant Jane Doe. Ms. Montes' request for an accommodation was that I.A. be permitted to enter the Kwanzaa Celebration exhibition without waiting further because I.A.'s autism and related behaviors prevented him from waiting on long, loud and/or over-

---

[1] This paragraph has been redacted to preserve the privacy of the individuals who were named in the post.

stimulating lines, and that I.A. had already started to become overstimulated. The Museum's security guard (defendant Jane Doe) flatly denied Ms. Montes' request.

31. Plaintiff Montes and I.A. then returned to their place in line in a last ditch effort to see if I.A. would be able to wait longer until the line began moving. Unfortunately, as was feared, I.A. could not tolerate waiting on the line and he began to start the process of a meltdown. Plaintiff Montes, not wanting to become an embarrassing public spectacle, was left with no choice but to remove I.A. from the line. I.A. had already started to exhibit behaviors, including but not limited to crying and attempting to run away, due to being overstimulated and it was clear he would not be able to continue to wait any longer.

32. Plaintiff Montes again approached the Museum's security guard (Jane Doe) and reiterated that her son had autism and that he needed a reasonable accommodation in order for him to be able to access the program. Again, the security guard (Jane Doe) refused.

33. Plaintiff Montes approached the Museum's Customer Service desk. A gentleman, "Mr. Carl," a customer service representative employed by the Museum, listened to Plaintiff Montes' description of what took place and agreed that I.A. should be permitted to enter the exhibition on an expedited basis as an accommodation. Mr. Carl then took Plaintiff Montes and I.A. to the security guard (Jane Doe) to try (for a third time) to secure the requested accommodation.

34. The Museum's security guard (Jane Doe) was extremely rude (even to Mr. Carl) and again denied the requested accommodation. Plaintiff Montes was left with no option but to leave the Museum with I.A., who was then completely disregulated and exhibiting interfering behaviors. I.A. was thus precluded from attending the exhibition.

35. Due to Plaintiff Montes' previous communications with Ms. Liss (then the Museum volunteer supervisor), including meeting her in 2013, Plaintiff Montes then made an effort to reach out to Ms. Liss after she had been refused a reasonable accommodation from the security guard (Jane Doe) on three different occasions.

36. At 3:34 p.m. on December 27, 2014, Ms. Montes emailed:

"Hi Ms. Jessica:
I hope all is well and you enjoyed the holiday. I am (sic) the museum right now. We can to see Kwanzaa dance. However, we will have to leave. I asked for an accommodation and the security staff told me I had to join the line. I was on the line but I had to get out because it was really crowded for [I.A.] Please let me know if this is okay. I have requested accommodations at other city museums in the past and I have had a positive response. Pls let me know your thoughts. Thanks!
Have a good day!
All the best,
Susana"

Exhibit A attached hereto.

37. Immediately after hitting the "send" button, Ms. Montes received the following acknowledgement message from Ms. Liss' email server:

"The American Museum of Natural History is closed Thursday, December 25th in observance of the holiday. I am out of the office, Wednesday, December 24, returning Tuesday, December 30. If you are visiting the Museum, your Patrons Circle membership entitles you to concierge service, express ticketing, and free coat check in the Member Lounge. The Lounge is access most readily via the Main entrance on 79th Street and Central Park West and immediately to your right upon entry. If this is an urgent matter that requires immediate attention, please contact my colleague Christine Huron at (212)769-5286. Otherwise, I look forward to replying to you when I am back in the office on Tuesday."

38. Upon receiving this email, Plaintiff Montes attempted to call Ms. Huron at the number listed above but no one answered.

39. On Sunday, December 28, 2014, Plaintiff Montes reached out to Mattie Ettenheim, a contact person at MAC, to alert MAC of the incident. (Exhibit B hereto).

9

40. On December 29, 2014, Plaintiff Montes received a response from Miranda Appelbaum, the Chair of MAC. (Exhibit C hereto).

41. On December 30, 2014, Plaintiff Montes emailed the Museum directly to document what had transpired on December 28, 2014. (Exhibit D hereto).

42. Also on December 31, 2014, Plaintiff Montes filed an ADA-based complaint with the United States Department of Justice (the appropriate federal agency for filing ADA-based claims). (Exhibit E hereto)

43. On September 16, 2015, Donald A. King, a Complaints Manager for the Office of Diversity and Equal Opportunity for NASA emailed Plaintiff Montes the following:

> Good morning Ms. Montes-
> I have been assigned to assist in the processing of your complaint against the American Museum of Natural History. I wonder if there is a way for this matter to reach an amicable and mutually beneficial resolution. Would you be amenable to discussing such a resolution? Please feel free to call or email me. Thank you and I hope you have a pleasant day.
> Donald A. King
> Complaints Manager
> Office of Diversity and Equal Opportunity
> NASA Headquarters
> 300 E Street, S.W.
> Washington, D.C. 20546
> (202)358-0952

(Exhibit F hereto).

44. Plaintiff Montes responded that she wanted to think it over and would get back to Mr. King shortly.

45. On October 6, 2015, Mayerson & Associates wrote to Mr. King outlining some of the background information underlying the claim and proposed various non-monetary forms of relief to address the claims and resolve the dispute. (Exhibit G hereto).

46. On November 13, 2015, a "mediation" was held at the Museum's offices.

47. Plaintiffs attended the mediation in good faith. Upon information and belief, however, defendant did not attend the mediation in good faith.

## FIRST CLAIM FOR RELIEF
### (Declaratory Relief)

48. Plaintiffs repeat and reallege the allegations set forth at paragraphs 1 – 47 as if fully set forth.

49. The American Museum of Natural History qualifies as a "public accommodation" under the Americans with Disabilities Act ("ADA"), 42 U.S.C. Sec. 12181 et seq.

50. Plaintiff Montes timely disclosed to defendants that I.A. had been diagnosed on the autism spectrum and thus communicated that he had a disability recognized by the ADA.

51. Plaintiff Montes repeatedly requested and was repeatedly refused a reasonable accommodation so that I.A. could access and enjoy the Museum's Kwanzaa program and exhibit.

52. I.A., as a person diagnosed on the autism spectrum, falls within the zone of protection guaranteed by the ADA.

53. Defendants discriminated against I.A. by reason of his autism by (a) refusing to accord I.A. the reasonable accommodation that he needed and had requested so that he could access and enjoy the Kwanzaa exhibit at the Museum, and (b) upon information and belief, fostering and/or allowing an offensive, if not hostile environment, that discriminates against individuals with developmental disabilities.

54. Upon information and belief, the Museum has previously received complaints from other parents of children with disabilities, complaining of offensive and disturbing treatment by the Museum's security guards.

55. In *PGA Tour v. Casey Martin*, 532 U.S. 661 (2001), the United States Supreme Court held that an individualized, actual impact analysis must be applied where, as here, a person with a disability is seeking a limited waiver, or other policy modification that is needed to access a public accommodation. The high court also held that reasonable accommodations must be granted unless doing so would "fundamentally change" the character of the public accommodation.

56. Defendants failed to employ an individualized, actual impact analysis or the likely impact of according the requested accommodations but rather functionally denied I.A.'s access into the exhibit and thus discriminated against him.

57. A justicable controversy exists and there are no administrative remedies that plaintiffs are required to exhaust.

58. Plaintiffs made diligent, good faith efforts to avoid having to proceed to litigation. The parties have exhausted pre-litigation mediation, convened on Friday, November 13, 2015. Despite the mediator's best efforts, the American Museum of Natural History made absolutely no efforts towards settlement. Worse yet, the Museum is denying that the incident ever happened. Adding injury to insult, Plaintiff Montes had to take off a day of work (and thus lose a day of wages) to attend a "mediation session" that was attended by the Museum in bad faith.

59. Accordingly, this Court should declare that defendants have discriminated against I.A. and his mother under the ADA, award plaintiffs nominal damages, declare plaintiffs' status as

a prevailing party under the ADA and grant plaintiffs leave to submit an application for attorneys' fees and costs, pursuant to the Act's express fee-shifting provisions.

### SECOND CLAIM FOR RELIEF
### (Injunctive relief and Appointment of Monitor)

60. Plaintiffs repeat and reallege the allegations set forth at paragraphs 1-59 as if fully set forth.

61. Plaintiff I.A. has been irreparably harmed by defendant's discriminatory actions and policies, and what happened to I.A. at the Museum's Kwanzaa exhibit is likely to happen to other children.

62. By reason of defendants' discriminatory acts and reckless indifference to plaintiffs' rights, defendants are likely to continue to discriminate against and victimize other museumgoers who, like I.A., may need reasonable accommodations to access the Museum's programs.

63. This Court is empowered to direct appropriate injunctive relief to ensure defendants' compliance with the ADA, and to appoint a monitor to supervise defendants' compliance with the ADA in the application, admission and training process.

64. Accordingly, this Court should:

   a. Direct defendants to establish internal procedures and conduct at least two mandatory universal (all staff and employees) trainings annually that are designed to promote compliance with the requirements of the ADA;

   b. Appoint a monitor for a period of at least three years, to be compensated on an hourly basis by defendant American Museum of Natural History, at rates set by the Court, to render and file quarterly reports with the Court reporting as to

defendants' compliance with the ADA in the application, admission and teaching process, and to certify the extent to which defendants have conducted the mandatory trainings ordered by the Court;

c. Declare plaintiffs' status as a prevailing party; and

d. Grant plaintiffs leave to submit a fee application pursuant to the fee-shifting provisions of the ADA and any other fee authorizing statutes.[2]

### THIRD CLAIM FOR RELIEF
### (Nominal Damages)

65. Plaintiffs repeat and reallege the allegations set forth at paragraphs 1-64 as if fully set forth.

66. Plaintiff I.A. has been harmed and victimized by defendant's discriminatory actions and policies.

67. Plaintiffs are not bringing this action for monetary relief. Plaintiffs thus seek nominal damages in the amount of TEN DOLLARS ($10.00), plus an award of fees and costs in accordance with *Millea v. Metro North Railroad Company*, 658 F.3d 154 (2d Cir. 2011).

Dated: November 24, 2015
New York, New York

_____
Gary S. Mayerson (GM 8413)
Maria C. McGinley (MM 9438)
Mayerson & Associates
Attorneys for Plaintiffs
330 West 38th Street, Suite 600
New York, New York 10018
Phone: (212) 265-7200
www.mayerslaw.com

---

[2] Plaintiffs' claims also are being referred to the Attorney General, who is empowered to seek a civil penalty and other damages. 42 U.S.C. § 12188(b).

STATE OF NEW YORK )
) ss.:
COUNTY OF NEW YORK )

    I, Susana Montes, am one of the plaintiffs in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The contents are true to my own knowledge except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

_____
Signature

Sworn to before me on this 24th day of NOVEMBER, 2015.

_____
Notary Public

MAURICIO J. BERTONE JR.
Notary Public, State of New York
No. 01BE6309117
Qualified in Rockland County
Commission Expires August 4, 2018